IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JIDEOFOR AJAELO,

        Petitioner,

  v.

DOMINGO URIBE,

        Warden, Respondent.

No. C 10-3327 SI

**ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

This is a habeas petition filed by petitioner Jideofor Ajaelo, an inmate of California State Prison, pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition for a writ of habeas corpus is DENIED.

## BACKGROUND

The California Court of Appeal summarized the underlying facts of this case as follows:

> After a party on the night of January 31, 2004, Siara Spriggs drove Stephanie Franklin, Lendell Waters and George Carnegie to the Giant Burger on the corner of 81st Avenue and East 14th Street in Oakland. Around the same time, co-defendant Lamar Williams, his brother Diwon, and his girlfriend Larona Jones drove to Giant Burger in a car belonging to the Williamses' mother. As Lendell Waters went to place an order for food he met Larona Jones, whom he knew through a cousin. Waters had a friendly conversation with Jones before ordering and paying for his food. Lamar Williams took offense at the exchange between Waters and his girlfriend. A verbal confrontation ensued between Williams and Waters. Waters got back in Siara's car feeling disrespected and very upset, and Siara drove off.
>
> Meanwhile, co-defendant Williams borrowed his brother Diwon's cell phone, walked away from the car and placed a call to co-defendant Lanare Wise (also known as Binkey). Within minutes defendant arrived in his Buick Regal at the corner of East 14th Street across from Giant Burger. Binkey was in the front passenger seat. Michael

Anderson (also known as Cripple Mike) and Alexander Gomer (also known as Nose) were in the back seat. They had a shotgun with them in the car. Williams got into rear of the car on the passenger side, and told defendant to follow a small four-door car down 81st Avenue.

In the meantime, Siara drove around the block back towards Giant Burger because Waters said he wanted to get his food. Stephanie suggested Siara just pull over and drop the boys off on 81st Avenue. Siara had slowed almost to a halt to allow the boys out the car when she heard a loud noise, which she did not immediately recognize as a gunshot. Waters shouted, "Drive." Siara drove off as fast as she could as she heard more shots ring out. She made a right turn where 81st crossed the railroad tracks (on San Leandro Street). More shots were fired at her car on San Leandro Street. During this time, another vehicle was "going back and forth with her car," keeping pace with whatever speed she was going. Just before the shooting stopped Siara turned and looked over to her left. She saw the other car right next to hers, only about four feet away. It was dark but Siara could see a long gun sticking out the rear passenger window of the other car on the side closest to her car.

At some point after she made the right turn on San Leandro, Siara realized she had been shot in the right leg because she felt a sharp pain then could no longer feel her foot on the driving pedals. Siara was unable to put any pressure on the gas pedal and the car began to slow down. She screamed at the people in the other car to stop shooting. Siara made another right turn and the car stopped. The other vehicle drove on straight ahead. She got out and tried to run but fell down because she had no feeling in her right leg. Lendell Waters and George Carnegie got out of the car and ran in different directions. Siara just lay there until someone called the police and an ambulance. Siara was shot five times–in her right leg, left forearm, her left side just below her armpit and twice in the back. Eighteen year old Stephanie Franklin died at the scene as a result of a gunshot wound to her back. Waters was shot in the left arm and left leg, and Carnegie escaped unharmed. Police recovered 15 shell casings at the scene on 81st Avenue and San Leandro.

Defendant was arrested in connection with the shooting on February 13, 2004. In his interviews with Oakland Police, defendant initially denied any involvement in the shooting and said he "was probably resting that night." He told police he couldn't remember if he had loaned his car to someone, and said that if there was any gunpowder residue in the car it would have been from the Fourth of July. Investigating officer Nolan then played defendant portions of taped statements by others at the scene. Shortly thereafter, defendant gave a taped statement in which he admitted he was driving the car involved in the shooting. Defendant stated that he was shocked and surprised when the shooting started. He swerved and almost crashed. He did not see who shot the weapon. He didn't know anyone in the car had a gun. No one in the car said anything about the reason for the shooting.

*People v. Ajaelo*, 2009 WL 449643, at *1-2 (Cal. App. Feb. 24, 2009).

Petitioner, as well as Lamar Williams and Lanare Wise, were charged with murder and three counts of attempted murder. The trial court granted petitioner's motion to sever. On January 31, 2007, a jury found petitioner guilty of first-degree murder and three counts of attempted first-degree murder. Petitioner filed a motion for a new trial, which the trial court denied. Petitioner was sentenced to a total term of 25 years to life without possibility of parole. On February 24, 2009, the California Court of

Appeal affirmed the judgment and on May 20, 2009, the California Supreme Court denied review. Petitioner filed this petition for writ of habeas corpus on July 29, 2010. In evaluating this petition, this Court reviews the decision of the California Court of Appeal.

**STANDARD OF REVIEW**

This Court may entertain a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State Court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may grant such a writ to a state prisoner only if the state court's rulings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States," or were "based on an unreasonable determination of the facts in light of the evidence presented" in the state court. 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409. Any determination of a factual matter made by a state court is presumed to be correct, but can be rebutted by the petitioner through a showing of clear and convincing evidence. 28 U.S.C. 2254(e)(1).

**DISCUSSION**

**I.      Confrontation Clause**

Petitioner contends that the trial court erroneously admitted statements made by his co-defendant Wise in violation of the Confrontation Clause. The statements were part of the preliminary hearing testimony of Alexander Gomer, a passenger in the back seat of petitioner's vehicle at the time of the shooting. Gomer's preliminary hearing testimony was read at petitioner's trial after the parties stipulated Gomer was unavailable as a witness. At the preliminary hearing, Gomer was called as a witness by Wise's lawyer. During the preliminary hearing, Gomer testified that at the time of the shooting, he was in the back seat of petitioner's car but was ducking and never saw any guns in the car. Respondent's Ex. 1 at 392. Gomer testified that based on his army experience the shooting must have come from the back right of the vehicle, and that the gun used was a handgun. *Id.* Gomer denied hearing a shotgun during the shooting. *Id.* at 399. At the trial, the reading of Gomer's preliminary hearing testimony included the following questioning by the District Attorney about a statement Gomer had made to a police investigator regarding the presence of a shotgun:

Q.      Now, you said that Bink [Wise] was not shooting a gun; is that correct?

A.      No. Yes, yes, yes, yes.

Q.      So, Bink wasn't shooting a handgun?

A.      No.

Q.      Was he shooting a shotgun?

A.      No.

Q.      He has admitted to shooting a shotgun.

A.      I didn't hear no shotgun.

Q.      Did you see a shotgun?

A.      No.

Q.      Did you see a shotgun in the car?

A.      I can't remember. I don't think I seen no guns at all. I didn't see no guns.

Q.      Did you see Bink put a shotgun in the car when you all got in the car at 88th?

A.      I wasn't there when he got in the car. I was down the street farther when he got

4

1           in the car.

2 Ex. 4 at 585:7-25.

3       The reading of Gomer's preliminary hearing testimony continued with his cross-examination by Mr. Crofton, who represented co-defendant Lamar Williams at the preliminary hearing. Crofton attempted to refresh Gomer's recollection about a taped telephone conversation Gomer had had with Sergeant Nolan on March 1, 2004, in which Gomer had said that there was a black shotgun in the back seat of the vehicle.

    Q.    Would – would it refresh your recollection – I also asked if you remember telling Sergeant Nolan that you had actually seen the shotgun in that car. And you said you didn't recall.

    A.    I don't. I don't remember talking to him.

    Q.    *Would it refresh your recollection if I told you that in the statement that Bink or Mr. Wise gave to Sergeant Nolan, he said that you and everyone in the car were able to see the shotgun.*[1] Again, would that refresh your recollection?

    A.    No. I don't remember.

*Id*. at 623:9-22.

At that point in the trial, defense counsel interrupted the reading of Gomer's preliminary hearing testimony and objected on *Aranda-Bruton*[2] grounds. *Id*. at 624:2-8. The trial court overruled the objection, holding that the district attorney was using the statements to refresh Gomer's recollection. *Id*. at 624:9-11. The reading of Gomer's preliminary hearing testimony continued:

    Q.    Do you recall that – this is a question that was put to Mr. Wise by Sergeant Nolan.

        "And you didn't actually see the shotgun?"

        "Answer: I seen it afterwards."

        "Question: Where did you see it?"

        "Answer: It was still in the back seat."

        "Question: *So, okay, so anybody in that back seat would have*

---

[1] The italicized statements are those that petitioner asserts were admitted in violation of his rights under the Confrontation Clause.

[2] An *Aranda-Bruton* objection seeks to exclude testimonial statements made by co-defendants on the grounds that they may violate the Confrontation Clause. *See People v. Aranda*, 63 Cal. 2d 518 (1965); *Bruton v. United States*, 391 U.S. 123 (1968).

>   been able – would have had to have seen at some point that shotgun?"
>
>   "Answer: *Yes*."
>
> And Mr. Crofton continues his questioning.
>
> [Q.] Let me ask you this: You were in the back seat; correct?
>
> A. Yeah.
>
> Q. It's still your position you don't recall seeing the shotgun?
>
> A. I don't remember seeing it.
>
> Q. Would it refresh your recollection if I told you that *Mr. Wise told Sergeant Nolan he heard you say, "Pass me the shotgun?"*
>
> (Witness shakes head.)
>
> Would that refresh your recollection?
>
> A. No.

*Id.* at 624:21-625:17.

Crofton continued to cross-examine Gomer at the preliminary hearing. At one point, Crofton played a tape of Gomer's March 1, 2004 telephone conversation with Sergeant Nolan. *Id.* at 629:18-28. Crofton then asked Gomer if he recognized his voice on the tape; Gomer replied that he recognized his voice, but did not remember talking to Nolan. *Id.* at 630:4-11. At this point in the trial, the prosecutor marked the tape of Gomer's March 1, 2004 conversation as People's Exhibit 18 and played it for the jury. *Id.* at 631:1-632:22. Copies of a transcript of the tape were marked as Exhibit 18A and distributed to the jury with an admonition by the court that "the audio tape is the actual evidence." *Id.* at 632:7. According to the Court of Appeal's decision, "[i]n the transcript of the taped telephone call, Sergeant Nolan tells Gomer that 'Binky kind of confirmed to me that there was a shotgun in the car.' After that, Gomer admits there was a black shotgun in the back seat but said he wasn't sure about 'who ended with the shotgun out the window.'" *People v. Ajaelo*, 2009 WL 449643, at *4 n.4.

Outside the presence of the jury, defense counsel subsequently renewed her objection to the passages in Gomer's preliminary hearing testimony in which Gomer was asked about Wise's statements about a shotgun being in the car at the time of the shooting. *Id.* at 702:11-703:5. In response, the trial court stated that it would "admonish the jurors that the statement by Mr. Wise about the shotgun they

6

1 cannot accept as true. It was only used to refresh someone's recollection, if it did, in fact." Ex. 4 at 704:24-27. When the jury returned, the court instructed the jury as follows: "This morning when they were doing the reading . . . Mr. Crofton, who was cross-examining Mr. Gomer, was using a statement by the – Mr. Wise. And that statement concerned, did you see the shotgun or not, et cetera. That was used not for the truth of whether some other defendant or this defendant saw the shotgun, . . . but it's used to try to refresh his recollection, okay?" *Id*. at 707:16-708:2.

On appeal, petitioner contended that the admission of Wise's statements violated his Sixth Amendment right to confront witnesses against him. The California Court of Appeal denied this claim, holding,

> Here, as in [*Tennessee v.*] *Street*, [471 U.S. 409 (1985)] Wise's out-of-court statements were not used to prove the truth of the matter asserted. Rather, Wise's statements were used by co-defendant Lamar Williams's attorney to refresh Gomer's recollection that Gomer had seen a shotgun in defendant's vehicle at the time of the shooting; this in an attempt to rebut Gomer's suggestion that Williams was the only person in defendant's vehicle who had access to a weapon and who shot at the other car. Moreover, as in *Street* the trial court specifically instructed the jury that Wise's statements about a shotgun in the car were not to be considered for the truth of the matter asserted. (*Street*, *supra*, 471 U.S. at p. 414-415 & fn. 6 (noting that jury was "pointedly instructed by the trial court" not to consider the accomplice's confession for its truth and stating that "[t]he assumption that jurors are able to follow the court's instructions fully applies when rights guaranteed by the Confrontation Clause are at issue").) In sum, co-defendant Williams's use of co-defendant Wise's statements to refresh the recollection of Gomer on cross-examination raises no Confrontation Clause concerns with respect to defendant.

*People v. Ajaelo*, 2009 WL 449643, at *6.

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with the witnesses against him." U.S. Const. amend. VI. The federal confrontation right applies to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The Confrontation Clause applies to all out-of-court testimonial statements offered for the truth of the matter asserted, i.e., "testimonial hearsay." *See Crawford v. Washington*, 541 U.S. 36, 51 (2004). In *Crawford*, the Court stated that "whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68. Out-of-court statements by witnesses that are testimonial hearsay are barred under the Confrontation Clause unless (1) the witnesses are unavailable, and (2) the defendant had a prior opportunity to cross-examine the witnesses. *Crawford*, 541 U.S. at

7

59. The Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. *Id*. at 59 n.9.

Relying on *Tennessee v. Street*, 471 U.S. 409 (1985), petitioner argues that Wise's out of court statements were testimonial hearsay because they were introduced for the truth of the matter asserted, namely, that there was a shotgun in the car. In *Street*, Street and a co-defendant were convicted of killing a man during a burglary. *Id*. at 411. During his trial, Street testified that his confession was coerced by the police. *Id*. Street testified that when the Sheriff interrogated him, the Sheriff read from his co-defendant's statement and instructed him to say the same thing. *Id*. In order to rebut this assertion, at trial the Sheriff read the co-defendant's statement to the jury and emphasized the differences between it and Street's confession. *Id*. at 411-12. Before the confession was read, the judge instructed the jury that the confession was not to be considered for the truth of the matter asserted, but for rebuttal purposes only. *Id*. at 412. The Supreme Court first noted that the co-defendant's confession was not introduced for the truth of the matter asserted, and thus the confession was not traditional hearsay under the rules of evidence. *Id*. at 413. The Supreme Court held that "[t]he *nonhearsay* aspect of [the co-defendant's] confession - not to prove what happened at the murder scene but to prove what happened when respondent confessed - raises no Confrontation Clause concerns." *Id*. at 414 (emphasis in original). The Court held that the Confrontation Clause's fundamental role in protecting the right of cross-examination was protected because Street was able to cross-examine the Sheriff regarding the authenticity of his confession. *Id*.

The Court concludes that the state appellate court's rejection of petitioner's claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority. As the Court of Appeal held, Wise's statements were used for a nonhearsay purpose "to refresh Gomer's recollection that Gomer had seen a shotgun in defendant's vehicle at the time of the shooting; this in an attempt to rebut Gomer's suggestion that Williams was the only person in defendant's vehicle who had access to a weapon and who shot at the other car." Testimonial statements not offered for the truth of the matter asserted do not violate a defendant's rights under the Confrontation Clause. *Crawford*, 541 U.S. at 59 n.9; *Street*, 417 U.S. at 414; *see also Moses v. Payne*, 555 F.3d 742, 761 (9th Cir. 2009) (finding state court properly admitted son's out-of-court statement to social worker that his father had

kicked his mother; statement was introduced to show why social worker contacted Child Protective Services, not to prove defendant had kicked the victim).

Petitioner also contends that Wise's statements violated the Confrontation Clause because the jury would have been unable to disregard their substantive content despite the trial court's limiting instruction. Petitioner argues that Wise's statements were the only evidence that the shotgun had initially been in the front seat where petitioner, the driver, would have to have seen it. The Court of Appeal rejected this contention:

> It is true as the court noted in *Thomas* [*v. Hubbard*, 273 F.3d 1164 (9th Cir. 2001)], that there are "some cases in which out-of-court statements are so prejudicial that a jury would be unable to disregard their substantive content regardless of the purpose for which they are introduced and regardless of any curative instruction. (Citations.) . . . In such instances, the effect of the testimony on the jury is the same as it would be if the statements were admitted for the truth of their contents. Thus, whether or not such statements are classified as hearsay, they may violate the Confrontation Clause." (*Thomas*, *supra*, 273 F.3d. at p. 1173 (violation of Confrontation Clause where witness statement introduced for nonhearsay purpose of rebuttal "provide[d] the only evidence that Thomas had both a motive to kill Luke and access to the type of weapon used to commit the crime.").)
>
> In *Douglas* [*v. Alabama*, 380 U.S. 415 (1965)], the high court found a violation of the Confrontation Clause where the prosecutor, purportedly for the nonhearsay purpose of refreshing co-defendant Loyd's recollection, read to the jury Loyd's alleged confession after he asserted the privilege against self-incrimination, then called officers to authenticate the confession. (*Douglas*, *supra*, 380 U.S. at ¶. 416-417.) The high court concluded that although the prosecutor's reading of the alleged confession was "not technically testimony," the co-defendant's "reliance on the privilege created a situation in which the jury might improperly infer both that the statement had been made and that it was true." (*Id*. at p. 419.) In addition, the testimony of the police officers "enhanced the danger that the jury would treat the Solicitor's questioning of Loyd and Loyd's refusal to answer as proving the truth of Loyd's alleged confession." (*Id*. at p. 420.) Under these circumstances, the court held that "petitioner's inability to cross-examine Loyd as to the alleged confession plainly denied him the right of cross-examination secured by the Confrontation Clause." (*Id*. at p. 419.).
>
> The concerns present in *Thomas* and *Douglas* are absent here. Unlike the statements in *Thomas* and *Douglas*, Wise's statements did not provide a crucial piece of evidence against defendant. First, the presence of the shotgun in defendant's car, regardless of whether it was in the front seat or the back seat, was established by Gomer's statement in the tape played to the jury that there was a black shotgun in the vehicle. Second, Wise's statements were not crucial to the jury's determination that defendant consciously aided and abetted in the shooting. Defendant drove his car to Giant Burger where he picked up Lamar Williams as arranged. He followed the victim's car at Williams's instruction. Defendant did not stop his car when the shooting started. Rather, defendant kept pace alongside the victim's car while the shooter unloaded a fusillade of bullets into it, and even followed the victim's car after it made a right turn on San Leandro Avenue so that the shooter could continue to fire at it. Defendant fled the scene and initially lied to the police about his presence at the scene of the crime by telling them he was asleep at home on the night of the shooting and that any gunpowder

9

> residue in his car was due to fireworks. In sum, in light of all the other evidence before the jury, Wise's alleged statements were not so prejudicial that a jury would be unable to disregard their substantive content regardless of the purpose for which they are introduced and regardless of any curative instruction.

*People v. Ajaelo*, 2009 WL 449643, at *7 (internal citations and quotation omitted).

The Court agrees with the state appellate court's analysis. Wise's statements about the presence of a shotgun in the vehicle were not so prejudicial that a jury would be unable to follow the court's limiting instruction. As the Court of Appeal noted, Gomer himself admitted on the tape played to the jury that there was a shotgun in the vehicle. Further, there was ample evidence implicating petitioner in the charged crimes. The evidence at trial showed, *inter alia*, that after the altercation between Williams and one of the victims (Waters) at the Giant Burger, Williams called Wise, and within minutes petitioner arrived at the Giant Burger, along with Wise, Gomer and Anderson, to pick up Williams. Petitioner then followed the victims' car, and petitioner continued to drive alongside the victims' car, including turning right onto a different street, after the shooting began. Unlike the co-defendant's testimony in *Douglas* that "constituted the only direct evidence" that the defendant had fired the shotgun and that "formed a crucial link in the proof both of [Douglas's] act and of the requisite intent to murder," *Douglas*, 380 U.S. at 419, here Wise's statements about the shotgun were cumulative of Gomer's testimony and in addition to considerable evidence implicating petitioner.

Finally, even if the admission of Wise's statements violated petitioner's rights under the Confrontation Clause, petitioner is only entitled to habeas relief "if the error was not harmless, that is, if it had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Holley v. Yarborough*, 568 F.3d 1091, 1100 (9th Cir. 2009) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)); *see also United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004) (post-*Crawford* case). Wise's statements regarding the presence and/or location of the shotgun were not crucial to the jury's verdict because the evidence at trial showed that petitioner picked up Williams, followed the victims' car, kept pace with it during the shooting, and lied to the police during their initial investigation into the shooting. Habeas relief is not appropriate here. *See Brecht*, 507 U.S. at 637; 28 U.S.C. § 2254.

## II. Witness Outburst

Petitioner contends that the trial court erroneously denied his motion for a mistrial based on the in-court outburst of one of the prosecution's witnesses. Petitioner claims that by continuing the trial, the court deprived him of his Sixth Amendment right to an impartial jury. Larona Jones, co-defendant Williams' girlfriend, testified at trial. She testified that she dated him and did not tell police she was with him on the night of the murder because she was afraid of retaliation. Ex. 4 at 371:11-26. At the conclusion of her testimony Jones was dismissed from the stand and left the courtroom. While the next witness was called to the stand with the jury still in the courtroom, there was a disruption in the hallway, followed by a disruption in the courtroom. *Id.* at 385:25-26. Jones ran back into the courtroom and yelled something to the effect that she had been "jumped" in the hallway, and was upset about a supposed lack of protection. *People v. Ajaelo*, 2009 WL 449643, at *8. The jury was then taken upstairs and could not see what was going on in the courtroom or outside the courtroom. *Id*. The next morning, defendant's counsel filed a motion for mistrial due to her concern that the jury would conclude that Jones was intimidated by someone affiliated with defendant. Ex. 4 at 386. The court decided to voir dire each of the jurors individually. Five of the jurors said they did not hear what Jones yelled, while seven said heard part of her statements, each juror's version different. The court admonished each of the jurors individually, and all of them as a group, to disregard what had happened and not to consider it as evidence when making a decision. All of the jurors agreed that they could do so. *Id*. at 390-405. The court then denied the motion for mistrial.

Petitioner challenged the denial of the motion for mistrial on appeal. Petitioner argued that "the prosecution 'had a duty to reasonably anticipate possible misconduct by the witness [Jones] and control it' because it 'was aware that there could be hostility between Jones and others.'" *People v. Ajaelo*, 2009 WL 449643, at *9. Petitioner also asserted that "Jones's outburst implied that 'people connected with appellant had threatened or harassed' her. . . . [and that] the trial court's admonition to the jury was inadequate to cure the prejudice resulting from Jones's outburst." *Id*. The Court of Appeal rejected this contention:

> Defendant's speculative and conclusory assertions do not amount to a showing that the trial court's decision was an abuse of discretion. Nothing in the record suggests that Jones's outburst was anything other than wholly unanticipated. She had completed

11

>     her testimony and left the courtroom in an orderly fashion. Thereafter, an altercation of some sort took place in the hallway outside the courtroom. However, the jury never saw what happened outside of the courtroom and only some of the jurors heard what Jones said after she briefly came back into the courtroom. Jones did not suggest that defendant was responsible for the incident. After Jones's brief and isolated outburst, the trial court fully admonished the jurors, both individually and collectively, not to consider the incident for any purpose in making its decisions. In sum, the trial court did not abuse its discretion in denying the motion for a mistrial.

*Id*. In a footnote, the Court of Appeal stated, "To the extent defendant asserts a federal constitutional claim on the basis of the trial court's denial of his motion for a mistrial, 'rejection on the merits of a claim that the . . . court erred on the issue actually before that court necessarily leads to rejection of the newly applied constitutional 'gloss' as well. No separate constitutional discussion is required in such cases, and we therefore provide none. (*People v. Lewis and Oliver* (2006) 39 Cal. 4th 970, 990, fn. 5.)" *Id*. at *9 n.8.

Petitioner contends that he was deprived of his right to an impartial jury because the trial court's cautionary instruction was inadequate to dispel the prejudice caused by Jones's outburst. Petitioner asserts that Jones's outburst "made it appear as if persons associated with petitioner were threatening her, an insinuation that the prosecutor could not have made." Petition at m-5:17-18. Petitioner cites *People v. Warren*, 45 Cal. 3d 471 (1988), for the proposition that "evidence that a defendant is threatening witnesses implies a consciousness of guilt and thus is highly prejudicial and admissible only if adequately substantiated." *Id*. at 481. Petitioner argues that Jones's outburst before the jury implied that people connected with petitioner had threatened or harassed Jones, without any substantiation of such threats or harassment.

The Court concludes that the Court of Appeal's ruling was not contrary to, or an unreasonable application of, clearly established Supreme Court authority. The state appellate court's determination that Jones's outburst was "wholly unanticipated," to the extent it is a factual finding, is presumed correct and has not been rebutted. *See* 28 U.S.C. § 2254(e)(1). In any event, the appellate court correctly found there is no evidence in the record that petitioner caused a threat to Jones, or that the prosecutor was responsible for Jones's outburst. The trial court admonished all of the jurors not to consider Jones's outburst as evidence, and they all agreed to follow that admonition. Where a jury is admonished to ignore a witness outburst, there is a strong presumption that the court's curative instruction was followed

by the jury. *See Martinez v. Garcia*, 100 Fed. Appx. 702, 704 (9th Cir. 2004) (citing *Mancuso v. Olivarez*, 292 F.3d 939, 952 (9th Cir. 2002) (citation omitted)); *see also People v. Lucero*, 44 Cal. 3d 1006, 1024 (1988) (no abuse of discretion in denying defendant's motion for mistrial an isolated outburst from a spectator implicating the defendant was followed by an admonition by the court).

Furthermore, petitioner is entitled to relief on this claim only if Jones's outburst had a substantial or injurious effect on the outcome of the trial *See Brecht*, 507 U.S. at 637. In her outburst, Jones did not make any statements related to petitioner's involvement in the charged crimes. Further, as discussed *supra*, the record contains ample evidence implicating petitioner in the crimes for which he was convicted.

### III. Jury Instruction

Petitioner contends that the trial court erroneously gave CALJIC 3.02, titled "Principals – Liability for Natural and Probable Consequences." Petitioner contends that CALJIC 3.02 omitted elements of the offenses with which petitioner was charged, thereby depriving him of his constitutional right to have the charges brought against him proven beyond a reasonable doubt.

The district attorney originally requested CALJIC 3.02. *See* Ex. 1 at 728 (prosecution's proposed jury instructions). Petitioner's attorney did not initially request CALJIC 3.02. *Id.* at 745 (defendant's proposed jury instructions). During the discussion of jury instructions, the trial court brought up CALJIC 3.02:

The Court: And then let's now go to the first on my list is the 3.02. And the natural and probable consequences on the principal liability for natural and probable consequences. And I've had a chance to read the *Laster* case. And Ms. Levy? [defense counsel]

Ms. Levy: Your honor, as I was reading the *Laster* case, it became very familiar, so I think in terms of an aider and abettor, that natural and probable consequences is the proper – is one of the proper instructions to give.

The Court: It is a valid theory.

Ms. Levy: Correct.

The Court: And it also indicates that the court needs to make certain findings on that.

And one of them is that the court is satisfied the record in this trial contains substantial evidence that the defendant intended to encourage or

13

> assist the co-defendants in the shooting at the victim's car and the four people therein.
>
> For example, he sped up. The record should contain information about [how] he sped up to catch the victim's car at 81st Street. He kept even with the victim's car, almost even with the victim's car. The miles per hour was not a slow miles per hour so that he could facilitate the co-defendant shooting at the car. He also turned right on San Leandro Boulevard to stay close to the victim's car. He never stopped or slowed down after hearing the first shot.
>
> And the court does not, from the record, believe that he did not see any handgun or shotgun in the car before the shooting started.
>
> Also, it is reasonable that the jury could find that the murder and attempted murders were a natural and probable consequence of discharging a firearm from a motor vehicle at another motor vehicle at close range. So I will give 3.02.

Ex. 4. at 839:10-840:18. Defense counsel made no objection.

On appeal, petitioner challenged CALJIC 3.02 as erroneous.[3] The Court of Appeal held that petitioner waived this issue:

> Our further review of the record, however, shows defense counsel joined in the giving of CALJIC 3.02 (Principals-Liability for Natural and Probable Consequences). The issue is therefore waived for purposes of appeal. (*People v. Bolin* (1998) 18 Cal.4th 297, 326 (waiver found when defense counsel agreed to giving of instruction and raised no objection); (*People v. Jackson* (1996) 13 Cal.4th 1164, 1223, 920 P.2d 1254, 1287 (claims of error waived with regard to consciousness-of-guilt instructions where defendant joined in requesting them).)

*People v. Ajaelo*, 2009 WL 449643, at *9 n.9. The Court of Appeal also held that even if the issue had not been waived, there was no instructional error. *Id*.

Respondent contends that petitioner is procedurally barred from raising the jury instruction claim under the "adequate and independent state ground" doctrine. Under that doctrine, a federal court "will

---

[3] In its pertinent parts, CALJIC 3.02 as given to the jury read:

In order to find the defendant guilty of the crimes as charged . . . you must be satisfied beyond a reasonable doubt that:
1. The crimes Permitting Shooting from Vehicle (Section 12034(b)) and Shooting from Vehicle (Section 12034(d)) were committed;
2. That the defendant aided and abetted in that those crimes;
3. That a co-principal in those crimes committed the crimes of murder and attempted murder; and
4. The crimes of murder and attempted murder were a natural and probable consequence of the commission of the crimes of Permitting Shooting From Vehicle or Shooting From Vehicle.

Ex 1. at 799.

not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Respondent argues that the appellate court's adjudication of petitioner's jury instruction claim was based on an adequate and independent state ground, namely that the claim was waived because defense counsel agreed to CALJIC 3.02 and raised no objection.

Under the adequate and independent state ground doctrine, the state bears the burden of proving the adequacy of a state procedural bar. *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir.), *cert denied*, 540 U.S. 938 (2003). To be "adequate," the state procedural bar must be "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. U.S. Dist. Court*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal citation and quotations omitted). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Petitioner argues that in California, "a failure to object to an erroneous instruction is not a waiver of raising instructional error on appeal," and that "[i]t is only when defense counsel proposes the instruction or in some way agrees to it that an appellate court will find a waiver." Traverse at 9:8-12. However, the record shows that while petitioner's attorney did not propose CALJIC 3.02, she affirmatively agreed that "it is one of the proper instructions to give," and she made no objection. Ex. 4 at 839:19-20. The Ninth Circuit has held that such claims are procedurally defaulted. *See Paulino v. Castro*, 371 F.3d 1083, 1092–93 (9th Cir. 2004) (holding petitioner procedurally barred from challenging jury instruction when state appellate court "clearly and expressly held that the issue was waived because defense counsel consented to the trial courts handling of the issue."). Thus, this claim is procedurally defaulted, and because petitioner has not shown cause and prejudice or a miscarriage of justice, *see Coleman v. Thompson*, 501 U.S. 722, 750, it is barred.

### IV. Certificate of appealability

A certificate of appealability will not issue because petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### CONCLUSION

For the reasons stated above, the petition for writ of habeas corpus is hereby DENIED.

**IT IS SO ORDERED.**

Dated: July 6, 2012

SUSAN ILLSTON
United States District Judge